**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 25, 2016**

# In the Court of Appeals of Georgia

A16A0534. WOLF CREEK LANDFILL, LLC v. TWIGGS COUNTY.

PHIPPS, Presiding Judge.

Following the grant of its application for interlocutory review, Wolf Creek Landfill, LLC ("Wolf Creek") appeals from the denial of its motion to dismiss a breach of contract action. Wolf Creek contends that the six-year statute of limitation for breach of contract actions barred the action filed against it by Twiggs County, Georgia ("the County") and that the trial court erred in concluding that an anti-waiver clause in the parties' agreement allowed the County to proceed on its claims. Because the anti-waiver clause applies to "provisions" of the contract and not to claims arising from breach thereof, we reverse the denial of Wolf Creek's motion to dismiss.

We review a trial court's ruling on a motion to dismiss de novo.[1] "Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[2]

On or about July 8, 2005, the County, along with Wilkinson County, sold to Wolf Creek a landfill that was located in the County. As a condition of closing, the parties also entered into a Landfill Operating Agreement (the "Agreement"). The County's complaint, which was filed on March 6, 2015, arises out of Wolf Creek's alleged breach of the Agreement.

Wolf Creek answered the complaint and filed a motion to dismiss under OCGA §§ 9-11-12 (b) (6) and 9-3-24 for failure to state a claim upon which relief could be granted, arguing that the County's claims were barred by the six-year statute of limitation governing breach of contract. The County replied that the Agreement extended the limitation period for the permitted life of the landfill.

---

[1] *Sanders v. Trinity Universal Ins. Co.*, 285 Ga. App. 705, 706 (647 SE2d 388) (2007).

[2] Id. (punctuation and footnote omitted).

2

The trial court denied Wolf Creek's motion to dismiss, concluding that Section 18 of the Agreement allowed the County to proceed on its claims. Wolf Creek appeals.

1. Wolf Creek argues that the applicable statute of limitation bars the County's breach of contract claims. The County responds that the parties agreed to waive the benefit of the statute of limitation during the term of the Agreement and that any ambiguity in the contract should be construed against Wolf Creek, as the drafter of the agreement.

Section 11 of the Agreement ("Expansion Fee") provided that Wolf Creek would pay the County for each cubic yard of expansion of the landfill, upon receipt of a non-appealable expansion permit from the Georgia Department of Natural Resources ("DNR"). Section 9 of the Agreement provided that upon accepting municipal solid waste in the landfill from sources other than Twiggs or Wikinson County, Wolf Creek would pay the County a quarterly host fee based upon the tonnage of waste received (but no less than $135,000 per year).

According to the complaint, Wolf Creek breached Section 11 of the Agreement on January 28, 2007, when it failed to pay the expansion fee of $330,152.55 upon receipt of a non-appealable permit from the Georgia DNR which almost doubled the

volume of the landfill. The County also alleged that Wolf Creek breached the Agreement by underpaying quarterly host fees for the years 2006 (by $27,525) and 2007 (by $2,457).[3]

Under Georgia law, "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable."[4] This statute of limitation begins to run at the time the alleged breach of contract occurs, not at a later time when damages are alleged to result or are discovered.[5]

Because quarterly host fees were due within 30 days of the end of each calendar quarter, any fees for 2006 and 2007 would have been due no later than January 2008, more than six years before the County filed suit. As the complaint alleged, the expansion fee was due in January 2007, 30 days after the expansion

---

[3] The complaint also alleged that Wolf Creek underpaid 2010 quarterly host fees (by $344). In its motion to dismiss the complaint below, Wolf Creek acknowledged that the alleged breach in failing to pay 2010 host fees fell within the limitation period and did not seek dismissal of this claim in its motion. We thus do not address this claim.

[4] OCGA § 9-3-24.

[5] *Hamburger v. PFM Capital Mgmt.*, 286 Ga. App. 382, 385 (1) (649 SE2d 779) (2007).

permit was issued. Thus, the six-year statute of limitations barred the County's claims unless the parties agreed otherwise.

The Agreement provides in relevant part:

8. *Term*. The term of this Agreement (the *"Term"*) shall commence on the Effective Date [July 5, 2005] and shall continue in full force and effect for the permitted life of the Acquired Landfill and all future expansions thereof.

. . .

18. *Waiver*. Failure to enforce any provision hereof shall not constitute a waiver by either party and any such provision shall remain in full force and effect and may be asserted by either party at any time during the period of this Agreement.

The record does not reveal the permitted life of the landfill. The "Expansion Fee" section, however, provides that if the capacity of the landfill is increased "by not less than five million cubic yards, then the term of this Agreement shall thereby be extended for an additional twenty (20) year term." Because the complaint alleges that the expansion increased the volume of the Acquired Landfill by 6.6 million cubic yards, we can infer that the term is at least twenty years.

Georgia appellate courts have not addressed whether an anti-waiver provision, such as the one in Section 18, indicates an intent to waive or extend the statutory

limitation period for breach of contract. While some states have statutory[6] or judicial[7]

restrictions prohibiting or limiting contractual extensions of statutes of limitation,

Georgia does not.[8] Although we typically are called upon to interpret a shortening

---

[6] See Miss. Code Ann. § 15-1-5 ("The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants."); N.Y. Gen. Oblig. Law § 17-103 (3) ("A promise to waive, to extend, or not to plead the statute of limitation has no effect to extend the time limited by statute for commencement of an action or proceeding for any greater time or in any other manner than that provided in this section, or unless made as provided in this section."). See also *Amu v. Barnes*, 283 Ga. 549, 553 (662 SE2d 113) (2008) ("Prescribing periods of limitation is a legislative, not a judicial, function.") (citation and punctuation omitted).

[7] See *Haggerty v. Williams*, 855 A2d 264, 268-269 (Conn. App. 2004) (collecting cases regarding enforceability of permanent waiver of statutes of limitation at the inception of the original contract).

[8] See *Gen. Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 346 (309 SE2d 152) (1983) ("Georgia has no statute preventing parties from contracting to limit the time within which an action on an insurance policy may be brought.").

(rather than an extension) of the statute of limitation,[9] we have stated that "[c]ontractual periods of limitation are generally enforceable under Georgia law."[10]

In this regard, the County primarily relies on a case from 1898, in which our Supreme Court stated: "As the law may prescribe such a limitation in which actions shall be brought by the party to be affected, it is also within the power of the contracting parties to agree among themselves upon a period of time which would amount to a statute of limitations, *either greater or less* than the period fixed by the law."[11] We need not decide whether Georgia law allows parties to contractually extend or waive completely the statute of limitation, however, as the anti-waiver provision in this case did neither.

---

[9] See, e.g., *Rabey Elec. Co. v. Housing Auth. of Savannah*, 190 Ga. App. 89, 90 (2) (378 SE2d 169) (1989) ("While the statute of limitation for actions on simple contracts in writing is six years, . . . the Georgia courts have permitted parties to contract as to a lesser time limit within which an action may be brought so long as the period fixed be not so unreasonable as to raise a presumption of imposition or undue advantage in some way.") (punctuation and citations omitted).

[10] *N4D, LLC v. Passmore*, 329 Ga. App. 565, 566 (1) (765 SE2d 717) (2014) (punctuation and citation omitted).

[11] *Mass. Beneficial Life Assn. v. Robinson*, 104 Ga. 256, 272 (30 SE 918) (1898) (citations omitted and emphasis added).

"The cardinal rule of [contract] construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction."[12] "A contract . . . must be read reasonably, in its entirety, and in a way that does not lead to an absurd result."[13] In addition, we will not infer waiver of an important right unless the waiver is clear and unmistakable.[14] "Parties may stipulate for other legal principles to govern their contractual relationship than those prescribed by law; however, these must be expressly stated in the contract."[15]

The anti-waiver clause in the Agreement applied when a party failed to enforce one of its *provisions*. In such event, the party may still assert such *provision*, which remains in full force and effect. "Under Georgia law, words in a contract generally

---

[12] OCGA § 13-2-3.

[13] *Office Depot v. Dist. at Howell Mill, LLC*, 309 Ga. App. 525, 530 (2) (710 SE2d 685) (2011) (citation omitted).

[14] *Accurate Printers v. Stark*, 295 Ga. App. 172, 177 (1) (671 SE2d 228) (2008).

[15] *Jenkins v. Morgan*, 100 Ga. App. 561, 562 (1) (112 SE2d 23) (1959).

8

bear their usual and common meaning and the usual and common meaning of a word may be supplied by common dictionaries."[16]

A "provision" is defined as: "1. A clause in a statute, contract, or other legal instrument. 2. A stipulation made beforehand."[17] An "action," on the other hand, is statutorily defined as "the judicial means of enforcing a right."[18] A "'civil action' means an action founded on private rights, arising either from contract or tort."[19]

Construing the contract as a whole, we find only one reasonable interpretation of the anti-waiver clause in the Agreement.[20] The clause would allow a party to require strict compliance with a contract provision going forward, despite its failure

---

[16] *King v. GenOn Energy Holdings*, 323 Ga. App. 451, 455 (2) (747 SE2d 15) (2013).

[17] Black's Law Dictionary, p. 1345 (9th ed. 2009).

[18] OCGA § 9-2-1 (1).

[19] OCGA § 9-2-1 (2).

[20] See *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 844 (4) (752 SE2d 18) (2013) ("[N]o ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.") (citation and punctuation omitted); *Office Depot*, supra at 529-530 (2) ("[A] contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.") (punctuation and citations omitted).

to do so previously. Under the facts of this case, for example, the anti-waiver clause would allow the County to demand strict compliance with Wolf Creek's obligation to pay future quarterly host fees, despite its failure to do so in the past.[21]

A statute of limitation, on the other hand,

> has as its purpose the limiting of the time period in which an *action* may be brought, thereby providing a date certain after which potential defendants can no longer be held liable for claims brought on such actions. It is a procedural rule limiting the time in which a party may bring an *action* for a right which has already accrued."[22]

While the anti-waiver clause applies to "provisions" in the Agreement, the statute of limitation applies to the parties' rights to bring a civil action to remedy an alleged breach of those provisions.[23]

---

[21] See, e.g., *Glimcher Properties v. Bi-Lo, LLC*, 271 Ga. App. 322, 324 (1) (609 SE2d 707) (2005) ("Here, the evidence shows that the lease contained a valid 'No Waiver' provision, providing that [the tenant's] failure to exercise any power given to it under the lease or to insist upon strict compliance with the lease terms in a given instance did not waive [the tenant's] right to insist upon strict compliance with the terms of the lease at a later time."). But see *Smith v. Gen. Finance Corp.*, 243 Ga. 500, 501 (255 SE2d 14) (1979) (anti-waiver provisions may themselves be waived).

[22] *Cedartown North Partnership v. Ga. Dept. of Transp.*, 296 Ga. App. 54, 57 (2) (673 SE2d 562) (2009) (emphasis added, citation and punctuation omitted).

[23] *Id.*

The parties, who are presumed to have contracted with reference to the existing laws and their effect on the subject matter,[24] did not express an intent to extend the six-year statute of limitation.[25] We are not at liberty to rewrite a contract while purporting to construe it.[26] Accordingly, we find that the trial court erred in interpreting the anti-waiver clause to extend the statute of limitation.

2. Because we find that the six-year statute of limitation barred the County's claims based on the alleged failure to pay the expansion fee and underpayment of quarterly host fees for 2006 and 2007, we need not address Wolf Creek's argument that a contractual extension of a statute of limitation period would violate public policy.

*Judgment reversed. Dillard and Peterson, JJ., concur.*

---

[24] *Satterfield v. Southern Regional Health System*, 280 Ga. App. 584, 586 (1) (634 SE2d 530) (2006).

[25] Compare *N4D*, supra at 565 (construing contract provision entitled "Statute of Limitations," which provided that "'No action, regardless of form, arising out of the services under this Agreement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought within one year of the date of the last payment.'").

[26] *Mull v. Mickey's Lumber & Supply Co.*, 218 Ga. App. 343, 346 (2) (461 SE2d 270) (1995).