## A89A2162. CITY OF PEMBROKE v. HAGIN.
### (391 SE2d 465)

POPE, Judge.

According to the trial court's findings of fact, defendant Alfonso Hagin was hired in May 1986 by plaintiff City of Pembroke as a police officer. By law, a peace officer, in order to exercise the authority to make arrests, must, among other things, complete a basic training course established by the Georgia Peace Officer Standards & Training Council within twelve months of the date of his appointment as a

peace officer. See OCGA § 35-8-9 (a). In order to fulfill this requirement, the City of Pembroke sent officer Hagin to the Police Officer's Service Training Academy during January and February 1987. Before attending the academy, the police chief presented Officer Hagin with a one-page agreement which he was told he must sign in order to continue his employment. By the terms of the document, the City agreed to pay the costs of training on the condition that the officer remain employed by the City for a period not less than twelve months after graduation from the program. By signing the agreement, the officer promised to repay the City the sum of $1,800 representing "a portion of the total expense of the Police Officer's attending the [training program]" in the event he voluntarily terminated his employment before the twelve-month period expired. Officer Hagin voluntarily resigned from employment by the City in August 1987 and, apparently, accepted employment with another law enforcement agency. The City brought suit to recover the $1,800 owed under the written agreement. The trial court granted judgment to defendant on the ground that the contract contravened the public policy of Georgia by shifting the expense of minimum training requirements for a peace officer from the law enforcement agency to the individual officer. The City appeals.

1. " '(I)f there is one thing which more than another public policy requires, it is that men of full age and competent understanding, shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by the courts of justice. Therefore, you have this paramount public policy to consider — that you are not lightly to interfere with this freedom of contract.' [Cit.] 'It is well settled that contracts will not be avoided by the courts as against public policy, except "where the case is free from doubt and where an injury to the public interest clearly appears." ' [Cit.]" *Cash v. Street & Trail*, 136 Ga. App. 462, 465-466 (221 SE2d 640) (1975). "The power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Equitable Loan &c. Co. v. Waring*, 117 Ga. 599 (1) (44 SE 320) (1903). "Unless prohibited by statute or public policy, the parties are free to contract on any terms and about any subject matter in which they have an interest, and any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation. [Cit.] A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law."

*Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 603 (275 SE2d 163) (1980).

We cannot conclude that the agreement in question is contrary to the express or implied purpose of the statutes addressing minimum training requirements for Georgia peace officers. The applicable statutes set forth the minimum standards for employment and minimum training for individual peace officers. E.g., OCGA §§ 35-8-9 and 35-8-10. OCGA § 35-8-17 authorizes the Georgia Peace Officers Standards & Training Council to bring a civil action against an individual officer who does not comply with the certification requirements (subsection b) as well as against the law enforcement unit employing such an officer (subsection c). We find no intent by the legislature in the applicable code sections to impose the financial burden of training a peace officer solely upon the law enforcement unit employing him. We note that pursuant to OCGA § 35-8-7 (20) the Georgia Peace Officer Standards & Training Council may reimburse counties and municipalities for the costs of sending officers to a peace officer training program. A county or municipality is not required to train each officer but may chose to hire individuals who have already met the statutory certification requirements.

We conclude that the agreement at issue in this case is reasonably related to the City's interest in protecting its investment in training a new officer. In order to avoid the requirement of paying the amount specified in the agreement, the officer could simply have remained in his employment for twelve months. We hold the trial court erred in finding the agreement void for public policy reasons.

2. Because the trial court's findings of fact show that the defendant entered into the agreement and left his employment before the twelve-month period had expired, plaintiff City of Pembroke is entitled to judgment in its favor.

*Judgment reversed. Banke, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 23, 1990.

*A. G. Wells, Jr.*, for appellant.
*Lloyd D. Murray*, for appellee.